Gail G. SCARBOROUGH, Petitioner,

v.

AETNA LIFE INSURANCE COMPANY, Respondent.

No. B-7157.

Supreme Court of Texas.

March 29, 1978.

Roger L. Turner, Dallas, for petitioner.

Woodfin C. Henderson, Dallas, for respondent.

DANIEL, Justice.

The question presented by this case involves the right to benefits under a medical insurance policy.

Gail Scarborough's husband was included in a group accident and health insurance policy issued through his employer by Aetna Life Insurance Company. The policy provided comprehensive medical benefits for Mrs. Scarborough as a member of an insured employee's family. The medical coverage was limited by a continuing treatment exclusion which provided in part:

If, at the time a family member becomes insured under this Title, he has received treatment for a condition resulting from a disease or injury during the three month period just before he became insured under this Title, Covered Medical Expenses for that condition are subject to the limitations described below. Treatment of a condition means receiving either medical services or prescribed drugs or medicines.

1. Any expenses incurred in connection with such condition during the first twelve months while insurance is in force will not be considered Covered Medical Expenses.

The insurance policy went into effect on June 16, 1974. On July 1, 1974 Mrs. Scarborough underwent surgery for a complete hysterectomy and for removal of abdominal adhesions.

While the surgical expenses were covered by the comprehensive medical provisions of the policy, Aetna took the position that the continuing treatment exclusion applied and refused to pay Mrs. Scarborough any benefits. Aetna contends that the surgical expenses were incurred in connection with a condition for which Mrs. Scarborough had been treated during the three-month period prior to the policy's effective date.

The jury found that during the three-month period preceding June 16, Mrs. Scarborough did not receive treatment for a condition which related to her July 1 surgery. Accordingly, the trial court rendered judgment for her in the amount of the medical expenses incurred as a result of the surgery. The Court of Civil Appeals reversed and rendered judgment for Aetna on the ground that the continuing treatment exclusion applied to her surgery. 556 S.W.2d 109. The court held there was no evidence to support the jury's finding of no prior treatment of the condition.

On June 6, 1974, Mrs. Scarborough went to Dr. James Ensey, a gynecologist, for an annual physical examination. That examination revealed abdominal adhesions, an ab-

normal ovarian function, and that Mrs. Scarborough's ovaries were enlarged. Dr. Ensey testified that nothing revealed at the June 6 examination indicated that surgery was necessary at that time. However, he asked that she return for further examination on June 17 (the day after the insurance policy went into. effect). While Dr. Ensey testified that she showed some improvement on that date, his written report compiled as a result of this examination concluded with the recommendation of an ovarian excision.

After she developed abdominal pains, Mrs. Scarborough went to the hospital on June 30 at the direction of Dr. Ensey. After a third examination to verify Mrs. Scarborough's conditions of failing ovaries and abdominal adhesions, Dr. Ensey performed surgery on her the next day.

Aetna contends that since the June 6 examination revealed the conditions which necessitated Mrs. Scarborough's surgery, that examination was a medical service constituting treatment of a condition under the continuing treatment exclusion of the insurance policy. The Court of Civil Appeals sustained Aetna's contention, relying on *Provident Life & Accident Insurance Company v. Hutson,* 305 S.W.2d 837 (Tex.Civ. App.—Beaumont 1957, writ ref'd n. r. e.). *Hutson* involved an accidental death insurance policy with an exclusion of benefits if the insured's death was caused by medical or surgical treatments. While undergoing diagnostic surgery, the insured in *Hutson* died. The court held that his death was the result of medical treatment as a matter of law and denied benefits under the insurance policy.

The *Hutson* court adopted the general rule that "medical treatment" includes more than an operation or a prescription of drugs to relieve or cure a patient's condition. The court stated that the term also covers a preliminary examination given for the purpose of diagnosing an ailment or infirmity. *International Travelers Association v. Yates,* 29 S.W.2d 980 (Tex.Com.App. 1930, jdgmt. adopted); *McKay v. Bankers Life Company,* 187 N.W.2d 736 (Iowa 1971);

*Zeh v. National Hospital Association,* 233 Or. 221, 377 P.2d 852 (1963); *United Commercial Travelers v. Shane,* 64 F.2d 55 (8th Cir. 1933).

The insurance policy in *Hutson* excluded benefits if the insured's death resulted from any medical treatment. However, in the present case, the exclusion applies only if the insured has received "medical treatment for a condition resulting from a disease or injury." That is, for the exclusion to apply it is necessary that the insured received a medical service (which may be a preliminary examination) directed toward a known condition. The distinction is that in *Hutson* the exclusion was triggered by mere treatment, while Mrs. Scarborough's policy required treatment for a condition. Additionally, the surgical examination in *Hutson* was given for the purpose of diagnosing the insured's ailment, while the June 6 examination in the present case was only a routine physical check-up.

There is evidence in the record that Mrs. Scarborough was not treated during the three months preceding the effective date of the policy for the condition which necessitated the July 1 surgery. Both Mrs. Scarborough and Dr. Ensey testified that no more than a routine physical examination was conducted by Dr. Ensey on June 6. Moreover, Aetna offered no evidence to contradict their testimony. It was error for the Court of Civil Appeals to set aside the jury finding that Mrs. Scarborough had not received treatment for a condition during the three-month period preceding the effective date of the policy.

The judgment of the Court of Civil Appeals is reversed and that of the trial court affirmed.