**Jesus A. GARZA and Dolores Garza, Appellants,**

v.

**Jose R. GUERRERO, Appellee.**

**No. 04–98–00443–CV.**

Court of Appeals of Texas,
San Antonio.

Feb. 17, 1999.

Rehearing Overruled April 19, 1999.

Kenneth A. Richey, Richey & Young, P.C., Austin, for appellant.

John N. Tyler, Tyler & Peery, San Antonio, for appellee.

Before PHIL HARDBERGER, Chief Justice, TOM RICKHOFF, Justice ALMA L. LÓPEZ, Justice.

PHIL HARDBERGER, Chief Justice.

Jesus A. Garza and Dolores Garza ("Garzas") appeal a judgment in favor of Jose R. Guerrero for damages arising from an automobile accident. The Garzas present four issues, asserting: (1) the deposition testimony of Dea Joon Park was erroneously admitted; (2) no reporter's record was made of the videotape deposition testimony of Jose Eduardo Aguirre, D.M.D. while such testimony was presented to the jury; (3) an exhibit was erroneously admitted into evidence; and (4) the jury's damages award was against the great weight of the evidence. We affirm the trial court's judgment.

## FACTUAL HISTORY

On September 12, 1992, Guerrero's vehicle was stopped behind another vehicle, waiting for the other vehicle to turn. Jesus A. Garza, an unlicensed driver, ran into the back of Guerrero's vehicle while it

was stopped. Jesus was running an errand for his mother, Dolores, who authorized Jesus to use her vehicle.

Guerrero hit his mouth on the steering wheel of his vehicle causing his mouth to bleed. He went to a nearby convenience store and asked for ice, which he placed on his mouth. Guerrero did not report any injury to the police officer who arrived at the scene and did not seek immediate medical treatment.

Guerrero later consulted with an attorney, and, on September 30, 1992, Guerrero went to Jesus L. Almaguer, D.D.S. for an examination. Dr. Almaguer reported that Guerrero had previous dental work and, at the time of the accident, was wearing two partial plates. These plates were fractured beyond repair. In addition, several other teeth were fractured or loose and out of socket and would need to be restored with implants and fixed bridge work. After the accident, Guerrero had no teeth left in the top of his mouth. Dr. Almaguer estimated that the cost of the repairs to Guerrero's teeth would be $11,540.

In March of 1993, Guerrero also consulted with a plastic surgeon, Enrique C. Almaguer, M.D., who assessed Guerrero's condition as a post traumatic deformity of his nose with prominent nasal bone displacement and a deviation of his septum causing severe airway obstruction. Dr. Almaguer estimated that the cost of surgery to repair this condition would be $5,200.

On September 14, 1993, Guerrero was examined by Jose E. Aguirre, D.M.D., to obtain a second opinion regarding Dr. Almaguer's evaluation of the necessary dental work. Dr. Aguirre approved the treatment plan and the estimated cost as the most ideal, most reasonable treatment. By the time of trial, Dr. Aguirre testified that the cost of the treatment would have increased from $11,540 to $15,000. Dr. Aguirre further testified that the accident worsened Guerrero's condition with regard to his tempor-mandibular joint (TMJ), and the cost to repair that condition would be approximately $20,000.

At the request of the defense, Guerrero was also evaluated on February 7, 1994, by Dr. Arnold Valle. Dr. Valle approved the dental treatment plan recommended by Dr. Almaguer and estimated that the cost to repair Guerrero's TMJ condition would be $17,000.

Guerrero testified at trial that he suffers severe pain all the time from his condition. He is unable to eat solid foods. He suffers mentally because of the lack of his teeth, and he is unable to talk the same due to the pain. Dr. Aguirre also testified that when he examined Guerrero to give his second opinion, Guerrero was in severe pain. Dr. Aguirre prescribed medications in an attempt to alleviate the pain. Dr. Aguirre testified that an injury similar to Guerrero's would create problems with chewing any solid foods, would affect a person's speech and would make the individual psychologically insecure.

During the cross-examination of the various witnesses, the Garzas' attorney elicited information regarding the other possible causes of Guerrero's damages. These other possible causes included a 1991 assault in which Guerrero was hit in the chest and face with a car jack and a 1988 automobile accident. At the time of the 1988 automobile accident, Dr. Aguirre, who was Guerrero's treating dentist, noted Guerrero's TMJ condition. Guerrero never had this condition repaired.

The jury found the Garzas negligent and awarded Guerrero the following damages: (1) $10,000 for physical pain and mental anguish suffered in the past and that in reasonable probability will be suffered in the future; (2) $5,000 for physical impairment sustained in the past and that in reasonable probability will be sustained in the future; (3) $5,000 for disfigurement suffered in the past and that in reasonable probability will be sustained in the future; and (4) $15,000 for medical expenses sustained in the past and that in reasonable probability will be sustained in the future.

The Garzas timely appealed the trial court's judgment.

## DEPOSITION WITHOUT SIGNATURE

In their first issue, the Garzas contend that the trial court erred in admitting the videotape deposition testimony of Dae Joon Park because Park did not sign the deposition and his signature was not waived. Guerrero counters that the trial court properly admitted the deposition based on the trial court's determination that Park refused to sign the deposition. Guerrero further counters that any error or irregularity in the deposition, including its subscription, was waived because the Garzas failed to timely file a written motion to suppress. Finally, Guerrero counters that the error, if any, in admitting the deposition was harmless.

■■■ If a deposition transcript has been on file with the trial court for one day or more before trial, any error in the manner in which the deposition transcript is signed is waived unless a written motion to suppress is filed and delivered before the trial commences. Tex.R. Civ. P. 207(3); *Acevedo Trucking, Inc. v. State,* 934 S.W.2d 811, 813 (Tex.App.—Austin 1996, no writ); *De Forest v. Dear,* 659 S.W.2d 90, 91 (Tex.App.—Houston [14th Dist.] 1983, writ ref'd n.r.e.). Only if the deposition has not been on file for one day prior to trial may the motion to suppress be made orally at the time the deposition is offered into evidence. *Klorer v. Block,* 717 S.W.2d 754, 759 (Tex.App.—San Antonio 1986, writ ref'd n.r.e.); *De Forest,* 659 S.W.2d at 91. The deposition in this case was taken on September 5, 1997, and trial commenced September 15, 1997. There is no evidence in the record with regard to the date the deposition was filed with the trial court. The Garzas' attorney states in his objection, however, that the deposition was not on file for more than one day before trial; therefore, we conclude that the Garzas did not waive their objection by failing to file a written motion to suppress.

The Garzas' oral motion to suppress was sufficient to preserve error.

■■■ Rule 205 of the Texas Rules of Civil Procedure requires a deponent to subscribe a deposition transcript unless the parties waive the signing or the witness is ill or cannot be found or refuses to sign. Tex.R. Civ. P. 205. "It is well settled that a substantial compliance with the law is sufficient in the absence of any charge of fraud." *Klorer,* 717 S.W.2d at 758. The trial court found that Park refused to sign the deposition. The trial court's determination was based on: (1) the fact that Park had been held in contempt for failing to present himself at a previously scheduled deposition; and (2) Park stated on the record at his deposition that he did not want to sign anything. Although the Garzas' attorney asserted at trial that Park's statement did not relieve the court reporter from her responsibility of attempting to have the transcript signed after its completion, we conclude that there was substantial compliance with the rule, and the trial court acted within its discretion in admitting the deposition.

■■■ Even assuming the deposition was improperly admitted, any error in its admission would be harmless for purposes of this appeal. To obtain reversal of a judgment based upon error of the trial court in the admission or exclusion of evidence, the following must be shown: (1) that the trial court did in fact commit error; and (2) that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d 394, 396 (Tex.1989); *St. Paul Fire & Marine Ins. Co. v. Confer,* 956 S.W.2d 825, 831 (Tex.App.—San Antonio 1997, pet. denied). Reversible error does not usually occur in connection with an evidentiary ruling unless the whole case turns on the evidence admitted or excluded. *Confer,* 956 S.W.2d at 831.

The Garzas do not challenge the sufficiency of the evidence showing that the

automobile accident caused Guerrero's injuries. Guerrero and his son-in-law, who was his employee and a passenger in his vehicle when the accident occurred, both testified that his mouth was bleeding as a result of the accident. Park's testimony that Guerrero came into his store with his lip bleeding, stated that he had been in an accident, and requested ice, was cumulative of the other testimony. Assuming the testimony was erroneously admitted, it did not result in harm to the Garzas.

## ABSENCE OF REPORTER'S RECORD

█ In their second issue, the Garzas contend that the trial court erred in allowing the testimony of Jose Eduardo Aguirre, D.M.D., to be presented to the jury by the playing of an oral videotape deposition without the court reporter making a record of the testimony heard by the jury. Although an appellant is entitled to a complete statement of facts, where a witness testifies in the absence of a court reporter and the appellant fails to object, the appellant is not entitled to a new trial. *Lascurain v. Crowley*, 917 S.W.2d 341, 344 (Tex.App.—El Paso 1996, no writ); *Rogers v. CIGNA Ins. Co. of Texas*, 881 S.W.2d 177, 181 (Tex.App.—Houston [1st Dist.] 1994, no writ).

The Garzas assert: "The fact that the court reporter was not taking the deposition was not known to counsel, who were with the judge during parts of the proceedings, while the jury was reporting to 'Luis.' Only at each break in the testimony, were the counsel and the judge always present, and the Court Reporter was present." Although the record does reflect that the trial judge stated that he was going to work with the lawyers while the videotape was being played, there was also evidence that the trial court ordered two breaks while the videotape was being played, including a lunch break. There is nothing in the record that supports the contention that the attorneys were not present after these breaks or that the trial court continued to work with the lawyers after the breaks. Given that the lunch break extended for fifty-five minutes, we cannot accept the Garzas' assertion that counsel was only able to be present when the trial court announced breaks for the jury. The Garzas' brief states that counsel was with the judge during *parts* of the proceedings, indicating that counsel was not always required to be with the judge. We hold that the Garzas waived the court reporter's failure to record the videotape deposition testimony of Dr. Aguirre by their failure to object to the court reporter's absence.

## OPINION LETTER

█ In their third issue, the Garzas complain of the trial court's admission of Dr. Aguirre's letter setting forth his opinion regarding Dr. Almaguer's recommended dental treatment plan. The Garzas contend that the letter is hearsay and is not proven up by any affidavit of business records testimony. With regard to the Garzas' hearsay objection, error was not preserved because no objection was made on that basis. TEX.R.APP. P. 33.1. The objection was as follows:

MR. RICHEY: As to Exhibit Number 8, is Number 8 being proved up by an affidavit?

MR. TYLER: It's not proven by affidavit but he proved it specifically in his deposition where [he] said that is my letter and it's reasonable and it contains all my opinions and they are reasonable and necessary.

THE COURT: Let me see that.

MR. RICHEY: My objection to it, Your Honor, is that it wasn't proven up by affidavit. I'm not aware—although I can stand corrected—of business record questions that were asked to prove this up as a business record because it did not appear in an affidavit as part of this doctor's records. And the doctor said he was real sorry it didn't. So unless those are sustained by the testimony of the doctor through the business record answers and questions of the deposition,

I object that it didn't meet those standards.

THE COURT: Overruled. I'm going to let that in.

The Garzas' objection at trial was directed solely at whether the letter was properly authenticated. Although an affidavit is required for the self-authentication of a business record under rule 902(10), Dr. Aguirre testified that the exhibit was a true and correct copy of a letter that he wrote, bearing his signature and containing his opinion, and the original of the letter was contained in Guerrero's medical records. This testimony was sufficient evidence of authentication under rule 901(b)(1). *See* TEX.R. EVID. 901(b)(1). We further note that even if the letter was improperly admitted, it was cumulative of Dr. Aguirre's testimony; therefore, its admission would have been harmless. *Gee v. Liberty Mut. Fire Ins. Co.,* 765 S.W.2d at 396; *St. Paul Fire & Marine Ins. Co. v. Confer,* 956 S.W.2d at 831.

### DAMAGES

■ In their final issue, the Garzas contend that the damages awarded by the jury were against the great weight and sufficiency of the evidence. In considering a factual sufficiency point, we must assess all of the evidence and reverse for a new trial only if the challenged finding shocks the conscience, clearly demonstrates bias, or is so against the great weight and preponderance of the evidence that it is manifestly unjust. *Pool v. Ford Motor Co.,* 715 S.W.2d 629, 635 (Tex.1986). Having reviewed the evidence to support the jury's award of damages, we find the evidence to be factually sufficient.

### CONCLUSION

The judgment of the trial court is affirmed.